**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
─────────────────────────────────x
In re:

MARIA P. FORNARO

                                                 Chapter 7
                          Debtor.     Case No.: 07-20842 (MBK)

─────────────────────────────────x

NEW JERSEY LAWYERS' FUND FOR
CLIENT PROTECTION
                          Plaintiff,

   - v. -

                                            Adv. Pro. No.: 07-02277 (MBK)

MARIE P. FORNARO
                          Defendant.
─────────────────────────────────x

**APPEARANCES:**

Ruby D. Cochran, Esq.
Richard J. Hughes Justice Complex
25 W. Market St.
P.O. Box 961
Trenton, NJ 08625-0961
Attorney for Plaintiff, New Jersey Lawyers' Fund for Client Protection

Marie P. Fornaro, Esq.
45 Park Place
Morristown, NJ 07960
Appearing *pro se*

───────────────────────────────────────────────────────────────────

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM DECISION**

Ms. Maria Fornaro, Debtor, is a New Jersey attorney who previously underwent various disciplinary proceedings before the Supreme Court of New Jersey. One of those proceedings determined that, while representing a former client in an immigration matter, Ms. Fornaro had embezzled and converted that client's funds to her own use. Pursuant to the Rules Governing the Courts of the State of New Jersey, the New Jersey Lawyers' Fund for Client Protection (the "Fund") became subrogated to Ms. Fornaro's former client's rights, claims, and interests against Ms. Fornaro. The Fund filed a complaint in state court to collect from Ms. Fornaro the legal fees she had misappropriated from her client. Discovery was conducted and a full bench trial was held in the Superior Court of New Jersey. On May 10, 2006, the Superior Court entered a judgment for $2,250 for the Fund against Ms. Fornaro. Ms. Fornaro chose not to file an appeal or take any action to contest the judgment.

In its attempt to collect on the judgment, the Fund filed Ms. Fornaro's name with the New Jersey Division of Revenue under the Set-Off Individual Liability (SOIL) Program. Through the SOIL Program, a homestead rebate and state income tax refunds, totaling $2,005, became available for use in offsetting Ms. Fornaro's debt to the Fund. Before the Fund could offset its debt, Ms. Fornaro, on July 31, 2007, filed her Chapter 7 bankruptcy petition. In Schedule C of her petition, Ms. Fornaro exempted from her bankruptcy estate her tax refund and homestead rebate, money subject to set-off by the Fund. Ms. Fornaro was later granted a discharge on November 2, 2007.

The Fund filed a proof of claim in response to the bankruptcy filing, and on October 26, 2007, the Fund commenced an adversary proceeding to determine nondischargeability of the Fund's claim. In its pleadings, the Fund argued that, because Ms. Fornaro's indebtedness to the Fund was bottomed on fraud or embezzlement (as reflected in the state court judgment), the

2

Fund's claim was nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). Ms. Fornaro answered the complaint and counterclaimed for fraud, alleging that the Fund improperly based its adversary proceeding on false and fraudulent representations.

By Order dated December 10, 2008, the Fund obtained an order lifting the automatic stay and ordering the turnover of the frozen tax refunds delegated to offset the Fund's claim. Given its successful application for set-off, the Fund now reduced the claim amount in controversy to less than $300. As a result, the Fund moved to voluntarily dismiss its complaint pursuant to Fed. R. Civ. P. 42(a)(2), which the Court subsequently granted on February 5, 2009. Procedurally, the Fund's dismissed claim left Ms. Fornaro's counterclaim for fraud as the only outstanding issue. By Order to Show Cause, issued by the Court *sua sponte* on February 18, 2009, the Court directed the parties to address whether this Court should abstain from exercising jurisdiction over Ms. Fornaro's counterclaim. After briefing and oral argument, the Court determined that, for the reasons set forth below, permissive abstention is appropriate.

It is well-settled that a court may raise the issue of abstention *sua sponte*. *In re Strano,* 248 B.R. 493, 503 (Bankr. D. N.J. 2000). The decision whether to abstain falls within sound discretion of the court. *In re Asousa P'ship*, 264 B.R. 376, 391 (Bankr. E.D. Pa. 2001). Even where it has jurisdiction, a bankruptcy court is not compelled to hear a case; the court may, in its discretion, abstain from hearing the matter. *In re P & G Realty Corp.*, 157 B.R. 239, 242 (Bankr. W.D. Pa. 1993).

Abstention in the bankruptcy court is governed by 28 U.S.C. § 1334(d) and 11 U.S.C. § 305(a), which confer discretion upon bankruptcy courts to dismiss or suspend an action should such decision better the interests of the parties. *In re A & D Care, Inc.*, 90 B.R. 138, 141 (Bankr.

W.D. Pa. 1988). To determine whether permissive abstention is appropriate, courts apply a variety of factors, including the following:

> (1) the court's duty to decide what is before it; (2) the effect on the efficient administration of the estate if the court abstains; (3) the possibility of inconsistent results stemming from the abstention; (4) the waste of judicial resources; (5) the presence of difficult or unsettled areas of state law more properly addressed in a state forum; (6) considerations of comity; (7) prejudice to any non-debtor party from proceeding in federal court; (8) the extent to which state law issues predominate over bankruptcy issues; (9) the presence of a related proceeding commenced in state court; (10) jurisdictional basis other than 28 U.S.C. § 1334; (11) how related the case is to the main bankruptcy case; (12) the substance of a "core" proceeding; (13) the feasibility of severing state law claims from the bankruptcy case; (14) the burdens to the court's docket; (15) the existence of a right to a jury trial; and (16) the presence of non-debtor parties in the case.

*In re Strano*, 248 B.R. 493, 504 (Bankr. D. N.J. 2000). After considering these factors—namely the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, the effect abstention has on the administration of the case, the interests of judicial economy, and the burden to the court's docket—the Court will abstain from adjudicating Ms. Fornaro's counterclaim, and concludes that abstention best serves the interests of the parties and the Court.

The Court first addresses the factors regarding the relation of Ms. Fornaro's counterclaim to her bankruptcy estate (a jurisdictional issue) and its impact on the bankruptcy estate. Analysis of the bankruptcy court's jurisdiction necessarily begins with 28 U.S.C. § 1334. *Belcufine v. Aloe*, 112 F.3d 633, 636 (3d Cir. 1997). This section provides that the bankruptcy courts, through the district court, have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. A matter "arising under" title 11 is clear and lucid: proceedings created by or founded upon some provision in title 11 (the "Bankruptcy Code"). A matter "arising in" a bankruptcy case is one pertaining to the administration of the bankruptcy case, but not founded upon an express

4

provision in the Bankruptcy Code. A matter is "related to" a bankruptcy case if it "could conceivably have any effect on the estate being administered in bankruptcy" *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984) (emphasis omitted). The Third Circuit further defined the test for "related to" jurisdiction, by expecting bankruptcy courts to determine whether the outcome of the case "could alter the Debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.* As a corollary to this rule, if a case is unrelated, then there is no bankruptcy jurisdiction at all.

Strictly speaking, the jurisdictional parameters conferred by 28 U.S.C. § 1334 are unconnected to the "core/non-core" distinction specified in 28 U.S.C. §§ 157(b)(1) & (c)(1). While the former goes to the nature of the bankruptcy court's jurisdiction, the "core/non-core" distinction is relevant to the extent of a bankruptcy court's adjudicative authority. The bankruptcy court has the power to "hear and determine" any core proceeding; but in a non-core matter, the bankruptcy court only "submit[s] proposed findings of fact and conclusions of law to the district court[,]" with the district court first considering those proposals before entering any final order or judgment. 28 U.S.C. § 157(c)(1). Thus, the "core/non-core" matter determines the role of the bankruptcy court; it does not address the jurisdiction of the bankruptcy court. *See*, *e.g.*, *In re RNI Wind Down Corp.*, 348 B.R. 286, 292 (Bankr. D. Del. 2006).

In the instant case, Ms. Fornaro's counterclaim is not a "core" proceeding, as it does not arise under title 11, nor does it fall under the enumerated proceedings listed in 28 U.S.C. § 157(b)(2). This statement means that the Court may hear but not determine the case, nor may it enter a final order. More importantly, however, is that Ms. Fornaro's counterclaim teeters on the edge of "related to" jurisdiction. Based on the *Pacor* standard, it is an impermissible stretch

5

to characterize Ms. Fornaro's counterclaim as being "related to" her bankruptcy case. First, Ms. Fornaro's bankruptcy matter is a "no-asset" Chapter 7 case, with no distribution report having been filed by the Chapter 7 Trustee in August, 2007. Next, the Debtor received her discharged on November 2, 2007. Ostensibly, these facts illustrate that there remains nothing in Ms. Fornaro's bankruptcy estate left to administer. Without any assets to distribute and with her case already discharged, the Court fails to see how Ms. Fornaro's counterclaim could "conceivably . . . alter the Debtor's rights, liabilities, options, or freedom of action . . . ." *Pacor*, 743 F.2d at 994.

Looking deeper into the facts, furthermore, Ms. Fornaro's counterclaim is not related to her bankruptcy case, because the result in the instant proceeding will not impact the administration of the estate, nor does it have the potential to maximize the estate. On Schedule C of her bankruptcy petition, Ms. Fornaro exempted from her bankruptcy estate the state tax refund she had expected to receive. Were those funds not subject to set-off by the Fund, that money would have been channeled for Ms. Fornaro's own personal use. Exempted property is not used to repay creditors. 11 U.S.C. § 522(d)(5). Were Ms. Fornaro successful on her counterclaim, moreover, any pecuniary award would be a post-petition asset, which again would have no impact on the Debtor's bankruptcy estate. The Court, therefore, holds that Ms. Fornaro's counterclaim is not related to her bankruptcy case.[1] Accordingly, the Court's decision to abstain has no effect on the administration of the Debtor's bankruptcy estate.

The next factors the Court considers in deciding to abstain involve the interests of judicial economy and the burden litigating Ms. Fornaro's counterclaim might have on the Court's docket. The Court concludes that litigating this counterclaim necessarily reduces this Court's already limited resources. This conclusion is based on the nature of Ms. Fornaro's counterclaim and the

---

[1] While this holding presumably eliminates the Court's jurisdiction of Ms. Fornaro's counterclaim, the Court bases its decision in this matter on abstention grounds.

6

expense for both the parties and the Court. Besides requesting the Court to dismiss the Fund's action (now since obtained), Ms. Fornaro's counterclaim's requests the Court to "punish" the Fund for bringing its nondischargeability action. Counterclaim for Defendant, ¶ 30. Ms. Fornaro's counterclaim states, essentially, a claim for malicious prosecution by the Fund (although Ms. Fornaro's complaint is lacking in particularity and does not use such term).[2] The nature of the Debtor's counterclaim and the bulk of her submitted documentation attack only the Fund's commencement of its nondischargeability action.[3] "In the absence of very special circumstances or obvious prejudice, the bankruptcy court should abstain from resolving controversies which do not involve the property or administration of a debtor's estate, and where another court provides a more suitable forum." *In re Marrs*, 36 B.R. 22, 24 (Bankr. D. Tenn. 1983) (internal citations omitted)." Her request that this Court "punish" the Fund unnecessarily burdens the Court, especially because the counterclaim does not "relate to" her bankruptcy case. *See In re N. Terry Fayad*, No. 01-1062, 2005 WL 3263931, at *1 (D. Mass. July 25, 2005).

Finally, as an aside, the Court addresses Ms. Fornaro's ability to bring her action for malicious prosecution in "a more suitable forum." *Id.* Based on persuasive authority, the Court believes that Ms. Fornaro's counterclaim for malicious prosecution is not preempted by the Bankruptcy Code. The Court agrees with a recent Texas Supreme Court case decision, holding that malicious prosecution suits are not preempted, even though the claim arose in a bankruptcy action. *See Graber v. Fuqua*, 52 Tex. Sup. Ct. J. 249, 2009, Tex. LEXIS 2 (Tex. 2009). In a 5-4 decision, the *Graber* court found no evidence of congressional intent in the Bankruptcy Code or

---

[2] Without addressing the merits of Debtor's counterclaim, the Court notes that to succeed in a malicious prosecution claim, Debtor is required to prove that the Fund's suit "was brought without probable cause, that it was actuated by malice, that [Debtor] *suffered a special grievance*, and that the proceeding has been terminated favorably to the [Debtor]." *Rubin v. Nowak*, 248 N.J. Super. 80, 82 (N.J. Super. Ct. App. Div. 1991) (emphasis added). These particularities are absent in Debtor's counterclaim.

[3] As this adversary proceeding advanced, Ms. Fornaro attempted continually to relitigate the state court's underlying determination regarding Ms. Fornaro's dishonest conduct, a matter which Debtor is collaterally estopped from asserting.

7

Rules to preempt malicious prosecution claims based on conduct in an adversary proceeding. *Id.* at *15. The majority held:

> [T]he only broad provisions that apply to adversary proceedings—Rule 9011 and section 105(a)—evidence not an intent to preempt, but rather an intent to preserve the existing framework of federal procedure that does not preempt state malicious prosecution claims. In light of the well-established general rule that federal law does not preempt malicious prosecution claims predicated on conduct in federal court, we are unable to find the requisite evidence of an intent to preempt these same claims in bankruptcy.

*Id.* at 21. The court continued, "Because Congress was silent on the matter, we see no reason to discontinue state law's historic function of providing common law remedies for misconduct in federal court." *Id.* at *32. Ms. Fornaro's counterclaim for malicious prosecution, therefore, is not preempted by federal law.

In conclusion, the Court will abstain from adjudicating Ms. Fornaro's counterclaim for malicious prosecution. The Debtor is not prejudiced from bringing her action for malicious prosecution in another forum.

Dated: March 12, 2009

Honorable Michael B. Kaplan
United States Bankruptcy Judge

8